# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MAURICE LEONARD GIBSON, ) <br> ) <br> Defendant. ) | Case No. 4:07-cr-40066 |

## ORDER & OPINION

This matter is before the Court on Defendant Maurice Gibson's *pro se* request for compassionate release (dkt. 369) and his counseled Amended Motion for Compassionate Release (dkt. 371). The Government has responded (dkt. 374) and Probation has filed a recommendation (dkt. 372) at the Court's direction. This matter is ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

In January 2008, Defendant pleaded guilty to conspiracy to distribute crack cocaine (Count I), distribution of crack cocaine (Counts VIII and IX), and possession with intent to distribute crack cocaine (Count X) in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C). (Dkt. 159 at 1–5). On account of Defendant's prior felony drug convictions (dkt. 90), Defendant was sentenced to a mandatory minimum of life imprisonment on Counts I and X, as well as 360 months' imprisonment on Counts VIII and IX, to run concurrently (dkt. 178).

Defendant's sentence was subsequently reduced on three separate occasions. In November 2010, Defendant's sentence on all counts was reduced from life to 264 months' imprisonment. (Dkt. 254). In February 2015, his sentence was further reduced to 235 months' imprisonment pursuant to Amendment 782. (Dkt. 292). Most recently, in September 2020, the Court reduced Defendant's sentence to 210 months' imprisonment under Section 404(b) of the First Step Act. (Dkt. 365). Defendant is currently projected to be released on July 26, 2022. (Dkt. 371 at 1).

The instant motion[1] arises from the ongoing COVID-19 pandemic. Defendant is incarcerated at Federal Correctional Institution (FCI) Sandstone,[2] where there are currently 224 active COVID-19 cases among the inmate population, 15 active cases among staff, and no reported deaths; 237 inmates and 1 staff member were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 10, 2020).[3]

---

[1] Defendant's first motion for compassionate release (dkt. 360) was withdrawn when the Court granted Defendant a sentence reduction under Section 404(b) of the First Step Act. (*See* dkt. 368; Text Order of October 7, 2020). Defendant then filed a *pro se* Motion to Reinstate his motion for compassionate release, arguing he never authorized the withdrawal. (Dkt. 369). The Court construed Defendant's Motion (dkt. 369) as a new request for compassionate release incorporating the circumstances set forth in his prior motion. (Text Order of October 22, 2020). The Court therefore considers herein the circumstances set forth in Defendant's first *pro se* motion for compassionate release (dkt. 360) along with the briefing submitted pursuant to his instant motion for compassionate release (dkt. 369).

[2] At the time of Probation's filing (dkt. 372), Defendant was incarcerated at FCI McKean. He has since been transferred to FCI Sandstone. *See* https://www.bop.gov/inmateloc/ (last visited Dec. 10, 2020).

[3] The BOP website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not

Defendant, 39, claims he suffers from obesity (BMI ≥ 30), prediabetes, and hypertension. (Dkt. 360 at 2; Dkt. 371 at 1). He has also been diagnosed with hyperlipidemia and metabolic disorder. (Dkt. 371 at 2). Defendant argues his medical conditions, when coupled with the threat of COVID-19, constitute an extraordinary and compelling reason warranting compassionate release. (Dkt. 360 at 2). If released, Defendant proposes residing with his brother, a placement Probation finds suitable. (Dkt. 372 at 2).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by 18 U.S.C. § 3582(c)(1)(A). *United States v. Gunn*, ___ F.3d ___, 2020 WL 6813995 (7th Cir. Nov. 20, 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility,

---

equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.
*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 8, 2020) (emphasis in original). The website further indicates there have been 724 COVID-19 tests conducted at FCI Sandstone, 0 are pending, and there has been a total of 381 positive tests. *Id.*

whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Some courts have held this requirement may be waived, *e.g., United States v. Coles*, 455 F. Supp. 3d 419, 424–425 (E.D. Mich. 2020), while others have held it may not, *e.g., United States v. Albertson*, No. 116-CR-00250, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020). The undersigned has yet to decide that question.

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, 18 U.S.C. § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons warrant" compassionate release, 18 U.S.C. § 3582(c)(1)(A)(i). The policy statement issued by the United States Sentencing Commission, U.S.S.G. § 1B1.13, though not binding on district judges, provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *United States v. Gunn*, ___ F.3d ___, 2020 WL 6813995 (7th Cir. Nov. 20, 2020).

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

It appears Defendant is statutorily eligible for compassionate release in that more than 30 days have lapsed from the receipt of his request by the Warden of FCI McKean.[4] The remaining issues are whether Defendant has demonstrated

---

[4] Defendant's request for compassionate release was received and denied by the Warden before he filed his first Motion for Compassionate Release on September 11, 2020. (Dkt. 360 at 2).

"extraordinary and compelling reasons warrant" compassionate release and whether the 18 U.S.C. § 3553(a) factors favor release.

## I. Extraordinary and Compelling Reasons

Defendant argues his underlying medical conditions, when coupled with the risk of COVID-19, constitute "extraordinary and compelling" reasons for compassionate release. Specifically, he states he suffers from frequent incapacitating headaches, hyperlipidemia, and metabolic disorder; he also claims he has hypertension, BMI of more than 30, and has been determined by prison medical staff to be in a pre-diabetic medical state. (Dkt. 371 at 1-2; Dkt. 360 at 1). The government responds that these conditions are either not reflected in Defendant's medical records, not serious, or not recognized by the Centers for Disease Control ("CDC") as conditions that increase the risk of severe illness from COVID-19. (*See* dkt. 374 at 4, 8). Rather, the government argues Defendant's medical records indicate he is "a relatively healthy 39-year old." (Dkt. 374 at 8).

Defendant did not submit any medical records to support his claims. Although obesity (BMI ≥ 30) is recognized by the CDC as an underlying condition that increases the risk of severe illness from COVID-19, the government states Defendant's records do not reflect any concerns with obesity. (Dkt. 374 at 4). Without any showing from Defendant, the Court will not assume he has this condition. The CDC also recognizes hypertension as a condition that "might" increase the risk of severe illness from COVID-19; the government concedes that hypertension appears in Defendant's medical records but notes he has not been prescribed medication for it. (Dkt. 374 at 8). Lacking further information indicating Defendant's high blood pressure is a

serious medical condition, the Court will not conclude Defendant's risk from high blood pressure alone amounts to an 'extraordinary and compelling reason" warranting release. *See United States v. Melgarejo*, 2020 WL 2395982, at *4 (C.D. Ill. May 12, 2020) ("The Court could find no cases where a defendant with hypertension and no comorbidities was granted relief under the compassionate release statute."). Thus, although an underlying condition which increases the risk of severe illness from COVID-19 may in some cases constitute an "extraordinary compelling reason" warranting release,[5] the Court finds Defendant has not demonstrated he has medical conditions that rise to that level. Even if Defendant could establish "extraordinary and compelling reasons," the Court would nevertheless find release inappropriate on consideration of the factors set forth in 18 U.S.C. § 3553(a).

## II. The 18 U.S.C. § 3553(a) Factors

The nature and circumstances of Defendant's offense are serious. Defendant played a prominent role in a long-term drug trafficking conspiracy; as a member of the Black P-Stone gang in Chicago, he relocated to Rock Island County to assist the gang's drug distribution in the Quad Cities. (Dkt. 117 at 13). Beginning in 2002 and continuing for five years until his arrest, Defendant received and resold about 1.25 ounces of crack cocaine every other week, at times using the apartments of his sister

---

[5] The Court has previously accepted the position that "extraordinary and compelling reasons" may exist where a defendant suffers from an underlying condition that exacerbates the risk of COVID-19 if it is a "serious physical or medical condition" that is chronic ("from which he or she is not expected to recover") and which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *See, e.g., United States v. Hamilton*, No. 4:08-cr-40066 (C.D. Ill. Sept. 1, 2020); *see also* U.S.S.G. § 1B1.13, cmt. n.1 (a)(ii)(1).

and another woman for the drug operation and paying rent or providing crack in exchange. (Dkt. 117 at 14–16). Defendant was therefore held responsible for the full 15 kilograms of crack involved in the conspiracy and given a three-level upward adjustment for his role in recruiting others into the conspiracy. (Dkt. 159 at 11–12). In light of the seriousness of this offense and the sentence reductions Defendant has already received, a further reduction to time served would not provide just punishment for the offense or afford adequate deterrence. 18 U.S.C. § 3553(a)(2)(A)–(B).

Defendant's history and characteristics also weigh against release. Defendant's criminal history is virtually uninterrupted, beginning with a conviction for aggravated assault and violation of a court order at the age of 16. (*See* dkt. 159 at 12). At 18, he was convicted of a felony drug offense; his probation was subsequently revoked three times. (Dkt. 159 at 13). At 20, he was convicted of a felony drug offense that generated another three revocations of probation (Dkt. 159 at 14–15). He also pleaded guilty to aggravated unlawful use of a handgun. (Dkt. 159 at 15). Between age 22 and 24 he received four more convictions, including one for aggravated battery on a police officer; at 27 he was arrested for the instant offense. (Dkt 159 at 16–17, 3–4). Defendant has also been diagnosed with impulse control disorder and was required to attend a Batterer's Education Program in 2006 after he punched his girlfriend in the face, breaking her eye socket. (Dkt. 159 at 20–21). The Bureau of Prisons classifies Defendant as having a high risk of recidivism (dkt. 374 at 5),

7

suggesting Defendant's sentence is necessary to protect the public from further crimes. 18 USC 3553(a)(2)(C).

Defendant argues he has transformed his life and rehabilitated himself while incarcerated. (Dkt. 360 at 3). While he has been found to have committed five rule violations during his 13 years of incarceration (*see* dkt. 374 at 6), Defendant claims he has redeemed himself of these incidents, as demonstrated by his recent transfer to a low security institution. (Dkt. 360 at 2–3). He has also participated in self-help studies and institutional programs, including a post-secondary academic program in theology through which he is training to become a minister. (Dkt. 360 at 3). This progress is certainly commendable, and the undersigned is moved by Defendant's desire to live a rehabilitated life with his two daughters after one of his daughters sadly passed away due to a brain aneurysm. (Dkt. 360 at 3; Dkt. 371 at 1). The Court hopes Defendant will remain committed to his rehabilitation so that he can achieve this goal upon his release at the conclusion of his custodial sentence. However, on holistic consideration of the 18 U.S.C. § 3553(a) factors, the Court concludes release is not appropriate at this time.

## Conclusion

For the foregoing reasons, Defendant's request for compassionate release (dkt. 369) and his counseled Amended Motion for Compassionate Release (dkt. 371) are DENIED.

SO ORDERED.

Entered this 11th day of December 2020.

                                             s/ Joe B. McDade
                                             JOE BILLY McDADE
                          United States Senior District Judge